IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MISTY MORTON, #209144,               )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )        CASE NO. 2:08-CV-303-MEF
                                     )               [WO]
                                     )
RICHARD ALLEN, et al.,               )
                                     )
        Defendants.                  )

# RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

In this 42 U.S.C. § 1983 action, Misty Morton ["Morton"], a state inmate,
challenges the constitutionality of actions taken against her during her incarceration at the
Julia Tutwiler Prison for Women ["Tutwiler"].  The complaint lists Richard Allen, the
former commissioner of the Alabama Department of Corrections, Frank Albright, the
warden of Tutwiler, and Espanolia Nicholson, a correctional officer previously assigned
to Tutwiler, as defendants in this cause of action.[1]  Specifically, Morton complains that on
October 24, 2007 defendant Nicholson utilized excessive force against her to remove her
from the shower and thereafter while escorting her to the shift office.  Morton also
contends defendants Allen and Albright acted with deliberate indifference to her safety in

---

[1] The plaintiff identifies defendant Nicholson as Espandolia Nicholson.  However, this defendant's true name
is Espanolia Nicholson.  In the interest of clarity, the court refers to this defendant by her correct name.

hiring, training, monitoring and supervising officer Nicholson.  In addition, Morton argues

the actions of the defendants deprived her of equal protection and alleges a disciplinary

lodged against her for assault on a correctional official violated due process.  She also

seeks to invoke the supplemental jurisdiction of this court with respect to tort claims of

negligence and assault/battery against the defendants.  Morton seeks declaratory relief and

monetary damages for the alleged violations of her constitutional rights.  Morton demands

a trial by jury.

The defendants filed special reports and supporting evidentiary materials addressing

each of Morton's claims for relief.  Pursuant to the orders entered in this case, the court

deems it appropriate to treat the special reports as motions for summary judgment.  *Order

of July 29, 2008 - Court Doc. No. 21*.  Thus, this case is now pending on the defendants'

motions for summary judgment.  Upon consideration of these motions, the evidentiary

materials filed in support thereof, and the plaintiff's responses in opposition to the motions,

the court concludes that:  (i) The motion for summary judgment filed by defendants Allen

and Albright is due to be granted; while (ii) The motion for summary judgment filed by

defendant Nicholson is due to be granted in part and denied in part.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show there is

no genuine [dispute] as to any material fact and that the moving party is entitled to

2

judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

When the defendants meet their evidentiary burden and demonstrate the absence of any genuine dispute of material fact, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S.

---

[2]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." *Id*.  "'Shall' is also restored to express the direction to grant summary judgment." *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or

fails to properly address another party's assertion of fact by [citing to materials in the

record including affidavits, relevant documents or other materials] the court may ... grant

summary judgment if the motion and supporting materials -- including the facts considered

undisputed -- show that the movant is entitled to it.")  A genuine dispute of material fact

exists when the nonmoving party produces evidence that would allow a reasonable fact-

finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of
> professional judgment.  In respect to the latter, our inferences must accord
> deference to the views of prison authorities.  Unless a prisoner can point to
> sufficient evidence regarding such issues of judgment to allow him to prevail
> on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal

citation omitted).  Consequently, to survive the defendants' properly supported motions for

summary judgment, Morton is required to produce "sufficient [favorable] evidence" which

would be admissible at trial supporting her claims of constitutional violations.  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil*

*Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ...

or is not significantly probative ... summary judgment may be granted."  *Id.* at 249-250.

"A mere 'scintilla' of evidence supporting the opposing party's position will not suffice;

there must be enough of a showing that the [trier of fact] could reasonably find for that

4

party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202

(1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory

allegations based on subjective beliefs are likewise insufficient to create a genuine issue

of material fact and, therefore, do not suffice to oppose a motion for summary judgment.

*Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001);

*Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory

assertions ..., in the absence of [admissible] supporting evidence, are insufficient to

withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant

of summary judgment appropriate where inmate produces nothing beyond "his own

conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739

F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is

not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth

specific facts supported by requisite evidence sufficient to establish the existence of an

element essential to her case and on which the plaintiff will bear the burden of proof at

trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477

U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's

case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest

Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case

the plaintiff presents insufficient evidence to require submission of the case to the trier of

fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings and evidentiary materials before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish genuine dispute of

material fact, nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his/her favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Morton has demonstrated a genuine dispute of material fact in order to preclude entry of summary judgment on her excessive force claims against defendant Nicholson. Defendants Allen and Albright, however, are entitled to summary judgment on all of the claims lodged against them by Morton.

## III. DISCUSSION

### A. Synopsis of Facts

At this stage of the proceedings, the court must "take the facts alleged in the complaint [and response in opposition to summary judgment] as true and construe them in the light most favorable to [Morton]. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008)." *Danley v. Allen*, 540 F.3d 1298, 1304 (11th Cir. 2008). In that light, the facts are that on October 24, 2007 defendant Nicholson entered the bathroom while Morton was showering. Nicholson ordered Morton out of the shower and Morton obeyed this order.

7

Nicholson left the bathroom but returned in a few minutes at which time she grabbed Morton by the throat "choking her, jerking her around, pushing her, and using ... threats to beat her for getting into the shower." *Plaintiff's Complaint - Court Doc. No. 1* at 4. Subsequently, correctional officials paged Morton over the intercom system advising her to proceed to the shift office.  Nicholson confronted Morton as the inmate attempted to leave the dorm "grabbed [Morton] by the back of [her] neck ... yanked [her] around, ... pushed [her] out the door" and escorted the inmate to the shift office by the back of her neck. *Plaintiff's Exhibit 1 to the August 6, 2008 Response (Sworn Statement of Misty Morton) - Court Doc. No. 23-1* at 3.

Pursuant to referral by correctional personnel in the shift office, Morton reported to the health care unit for  a physical examination.  Morton advised the attending nurse that "Ms. Nicholson grabbed me by the neck, pushed me backwards [and] pulled me by the left arm out of the bathroom."  *Exhibit 2 to the Special Report of Defendants Allen and Albright(Body Chart of Misty Morton) - Court Doc. No. 19-2* at 8.  This examination revealed a "red mark on [right] side of neck and a small red round area on [left] side of neck.  No marks on arm or rest of body....  No broken skin or bleeding noted." *Id*.

### B.  Absolute Immunity

With respect to claims lodged against the defendants in their official capacities, they are immune from monetary damages.  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166

8

(1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear to the court that the defendants are state officials entitled to sovereign immunity under the Eleventh Amendment for all claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994). Thus, the defendants are entitled to absolute immunity from any claims for monetary relief presented against them in their official capacities. *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### C.  Equal Protection

Morton makes the conclusory allegation that the defendants violated her "federally protected right[] of ... equal protection" with respect to the actions about which she complains. *Plaintiff's Complaint - Court Doc. No. 1-1* at 2.

9

To establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) [she] is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against [her] based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact.... Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977). "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

Initially, the court notes that Morton fails to identify any similarly situated inmate

nor does she allege how the defendants acted in a more favorable manner towards any other inmate.  Thus, "[Morton's] equal protection claim necessarily fails first because [she] has not shown that [she] was treated differently from other, similarly situated prisoners." *Sweet*, 467 F.3d at 1319.  Additionally, Morton completely fails to meet her pleading burden as she does not allege that the defendants subjected her to adverse treatment based on some constitutionally impermissible reason; rather, she simply makes the conclusory assertion that the defendants violated her right to equal protection.  Beyond this self-serving and conclusory allegation, Morton produces nothing which suggests that the defendants took any action against her based on a constitutionally protected interest.  In light of the foregoing, the court concludes that Morton's mere conclusory assertion does not rise to the level of an equal protection violation and therefore provides no basis for relief in this 42 U.S.C. § 1983 action.  Consequently, the defendants are entitled to summary judgment on this claim.

### D.  The Disciplinary Challenge

In response to a page from the shift office, Morton proceeded to exit the dorm. Officer Nicholson, who did not hear the page, attempted to prevent Morton from exiting the dorm.  Nicholson asserts Morton pulled away from her causing an injury to her arm. *Exhibit 2 to the Special Report of Defendants Allen and Albright(Body Chart of Espanolia Nicholson) - Court Doc. No. 19-2* at 9 (small mark and bruise on right arm). A verbal altercation then ensued which resulted in Nicholson escorting Morton to the shift

11

commander's office.  After this incident, Nicholson charged Morton with a violation of Rule #29, assault on a person associated with the Alabama Department of Corrections. Morton asserts she did not pull away from Nicholson and therefore argues the disciplinary deprived her of due process.  Morton alleges an investigation of officer Nicholson's actions conducted by the Investigation and Intelligence Division of the Alabama Department of Corrections determined she did not assault Nicholson and the disciplinary should therefore be expunged from her record.

The court has thoroughly reviewed the investigative report referenced by Morton and the evidence obtained during the attendant investigation.  *Exhibit A to the March 19, 2010 Response of Defendants' Allen and Albright - Court Doc. No. 40-1* at 1-8;  *Exhibits B-X to the March 19, 2010 Response of Defendants' Allen and Albright - Court Doc. No. 40-2 through Court Doc. No. 40-24*.  Upon such review, it is clear that this report does not make any determination with regard to the validity of the disciplinary action taken against Morton for assault.  Although the investigation revealed contradictory statements by witnesses regarding the assault on Nicholson, the report did not in any way address the propriety of the disciplinary action taken against Morton; rather, this report only addressed officer Nicholson's behavior towards Morton on the day in question and deemed some of her actions "inappropriate."  *Exhibit A to the March 19, 2010 Response of Defendants Allen and Albright - Court Doc. No. 40-1* at 8.  Thus, the report fails to impact the

12

disciplinary issued against Morton.

On October 25, 2007, a correctional officer served Morton notice of a disciplinary action which charged that on October 24, 2007 "[y]ou, Inmate Misty Morton ... did continue to walk out of Dormitory F after being instructed to stop by Officer Nicholson. Officer Nicholson attempted to stop you and you pulled away from Officer Nicholson, causing her to hit and bruise her right arm on the podium.... Your action constitute[s] a violation of Rule #29 - Assault On Person(s) Associated with ALDOC." *Exhibit 2 to the July 29, 2008 Special Report of Defendants Allen and Albright - Court Doc. No. 19-2* at 24. At the disciplinary hearing held on this charge, Morton testified she did not pull away from officer Nicholson. *Id*. at 29. Two witnesses called by Morton, Lisa Darby and Priscilla Montgomery, stated they did not see Morton pull away from Nicholson. *Id*. at 30-31. Defendant Nicholson, however, testified that when she attempted to stop Morton from exiting the dormitory "Morton pulled away from me, which caused me to hit and bruise my right arm on the podium." *Id*. at 24. In addition, another of Morton's witnesses, Linda Knight, testified that Morton "tried to pull away from officer Nicholson...." *Id*. at 31.

In light of the evidence presented at the disciplinary hearing, the hearing officer adjudged Morton guilty of violating Rule #29. The hearing officer based her finding of guilt "on the testimony of the Arresting Officer ... who stated under sworn oath that Inmate Morton did continue to walk out of Dormitory F after Being instructed to stop by Officer

13

Nicholson, and when Officer Nicholson attempted to stop Inmate Morton, [Morton] pulled away from Officer Nicholson, causing Officer Nicholson to hit and bruise her right arm on the podium....  Inmate Morton's witness also stated that Inmate Morton tried to pull away from Officer Nicholson...."  *Id*. at 25.  The sanctions imposed upon Morton for this disciplinary infraction included confinement in disciplinary segregation for forty-five (45) days.  *Id*.

Morton argues the defendants deprived her of due process in the disciplinary process because the evidence did not support a finding of guilt.  The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required.  "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court.  *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital).  The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'  *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct.

2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests). In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *Meachum v. Fano,* 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"); *Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (a prisoner has no constitutional right to be confined in a particular institution and may be subjected to an interstate transfer without implicating the Constitution). Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the procedure affecting confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon the inmate. *Sandin*, 515 U.S. at 485, 115 S.Ct. at 2301 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). Thus, the deprivation imposed upon Morton based on the challenged disciplinary

did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300. This court must therefore determine whether the actions about which Morton complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

As the Supreme Court noted,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin,* 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.,* at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.
>
> "[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*, at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).
>
> After *Sandin,* it is clear that the touchstone of the inquiry into the

existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-223, 125 S.Ct. 2384, 2393-2394 (2005).

Applying the *Sandin* inquiry to this case, the court concludes that temporary placement of an inmate in segregation "though concededly punitive, does not represent a dramatic departure from the basic conditions" of the sentence imposed upon the plaintiff. *Id*. at 485. In light of the foregoing, it is clear that the segregation sanction fails to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Consequently, the plaintiff's theory of liability under the law as established in *Sandin* is without merit, and, therefore, summary judgment is due to be granted in favor of the defendants on the due process claims.

Moreover, assuming *arguenda* that the sanction imposed upon Morton warranted the protections of due process, Morton remains entitled to no relief. In *Wolff*, the United States Supreme Court determined that in the context of a prison disciplinary proceeding the Due Process Clause requires three procedural protections which include (1) advance, written notice of the charges, (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence, and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Furthermore, at a prison disciplinary hearing, the requirements of due

17

process are satisfied if "some evidence" supports the decision of the disciplinary hearing officer. *Superintendent v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773 (1985). The law is well settled that it is not the function of this court to assume the task of retrying prison disciplinary disputes and no *de novo* review of a hearing officer's factual findings is required when the decision is supported by some evidence. *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir.), *cert. denied*, 455 U.S. 992, 102 S.Ct. 1619 (1982).

A thorough review of the disciplinary report demonstrates that the disciplinary proceedings on the charged rule violation comported with all of the requirements of *Wolff*. Correctional officials furnished Morton with advance, written notice of the charge against her, allowed her the opportunity to call witnesses and present documentary evidence in her own behalf, and provided written statements by the fact finder of the evidence relied on and the reasons for the disciplinary action. Additionally, ample evidence supported the decision of the hearing officer. Nothing more is required by the Constitution. It is therefore clear that Morton received all the process to which she was due in the disciplinary proceedings.

### E.  The Excessive Force Claims

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard applied to an Eighth

Amendment excessive force claim contains both a subjective and objective component. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Hudson*, 503 U.S. at 8 (internal quotations omitted). With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. However, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4. "An inmate who is gratuitously [grabbed and choked] by [a prison] guard[] does not lose [her] ability to pursue an excessive force claim merely because [she] has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, ____ U.S. ____, 130 S.Ct.1175, 1178-1179 (2010).

Morton complains that on October 24, 2007 defendant Nicholson used excessive force against her absent provocation and for no reason. *Plaintiff's Complaint - Court Doc. No. 1* at 4. Defendant Nicholson denies the allegations made against her. Specifically, Nicholson asserts "Inmate Morton was not choked nor dragged out of the shower...." *Exhibit 1 to the Special Report of Defendant Nicholson (Affidavit of Espanolia Nicholson) - Court Doc. No. 15-1* at 3. Nicholson also argues she used only necessary and appropriate force when impeding Morton's exit from the dorm and in escorting Morton to the shift office. *Id*. at 6-7.

19

The record before this court indicates Morton received only *de minimis* injuries during the incidents on October 24, 2007.  In light of the opinion issued by the United States Supreme Court in *Wilkins*, the *de minimis* nature of an inmate's injuries is not dispositive of an excessive force claim.  *Wilkins*, _____ U.S. at _____, 130 S.Ct. at 1177 (Dismissal of "a prisoner's excessive force claim based entirely on ... [a] determination that his injuries were '*de minimis*' [is improper] ... [as it] is at odds with *Hudson's* direction to decide excessive force claims based on the nature of the force rather than the extent of the injury....").  The nature of the injuries suffered by Morton will, however, remain relevant to whether Nicholson actually used force as described by Morton and whether Nicholson acted "'maliciously and sadistically' rather than as part of 'a good faith effort to maintain or restore discipline.'"  *Id*. at 1180.  Additionally, the "relatively modest nature of [Morton's] injuries will no doubt limit the damages [she] may recover."  *Id*.

Defendant Nicholson argues she is entitled to qualified immunity on the plaintiff's excessive force claims lodged against her in her individual capacity.  However, the law of this Circuit precludes a defense of qualified immunity in cases alleging excessive force in violation of the Eighth Amendment because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation.  *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002), citing *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986); *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir.

2008) ("'[T]here is no room for qualified immunity' in Eighth Amendment ... excessive force cases because they require a subjective element that is 'so extreme' that no reasonable person could believe that his actions were lawful. *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir. 2002)."). Thus, a qualified immunity defense is not available when a plaintiff properly pleads the use of excessive force and the only question for a federal district court is whether the plaintiff has alleged facts sufficient to survive a motion for summary judgment. *Skrtich*, 280 F.3d at 1302; *see also Hudson,* 503 U.S. at 9-10 (1992); *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). Accordingly, this court will consider whether the plaintiff's allegations that defendant Nicholson maliciously and sadistically used excessive force against her, which the court must take as true for purposes of summary judgment, sets forth a violation of her Eighth Amendment rights.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Morton v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson,* at 7-8, 112 S.Ct. 995; *see also Whitley,* 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir.1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is

tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. at
321, 106 S.Ct. 1078 (quoting *Morton,* 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-1301.

Morton contends defendant Nicholson "grabbed my throat with her hand" and made
threatening statements then "let go of my neck, grabbed my arm, and pulled me out of the
bathroom...." *Plaintiff's Exhibit 1 to the August 6, 2008 Response (Sworn Statement of
Misty Morton) - Court Doc. No. 23-1* at1.  Morton further maintains that a few minutes
later defendant Nicholson "grabbed me by the back of my neck ... yanked me around, ...
pushed me out the door still holding me by the neck [and escorted me to the shift office]."
*Id*. at 3.  The undisputed medical records indicate that as a result of these incidents Morton
suffered some red marks to each side of her neck.  Defendant Nicholson denies Morton's
allegations regarding the amount of force used by Nicholson and maintains that the force
utilized did not constitute excessive force in violation of Morton's constitutional rights.
Viewing the facts in the light most favorable to Morton, as is required at this stage of the
proceedings, the court concludes defendant Nicholson is not entitled to qualified immunity
as the plaintiff has alleged facts sufficient to survive this defendant's motion for summary
judgment regarding the excessive force claims lodged against her.  *Skrtich*, 280 F.3d at
1301.  Specifically, disputed issues of material fact exist regarding the need for the uses
of force by Nicholson, the amount of force used by Nicholson and whether Nicholson acted
"maliciously and sadistically" to cause harm.  Consequently, the motion for summary

judgment with respect to the excessive force claims presented against defendant Nicholson in her individual capacity are due to be denied.  The court likewise concludes that Nicholson, at this stage of the proceedings, is not entitled to state-agent immunity from the plaintiff's state tort claims, i.e., assault, battery and negligence, presented against her in her personal capacity because such immunity does not protect against the actions about which Morton complains.  *Ex parte Cranman*, 792 So.2d 392, 405 (Ala. 2000) (state agent not immune from civil liability in her personal capacity (i) when the challenged action violates the Constitution or applicable rules/regulations promulgated by the State to regulate the action, or (ii) when the state agent acts maliciously beyond her authority).

### F.  Deliberate Indifference to Safety - Failure to Protect Richard Allen and Frank Albright

Morton argues defendants Allen and Albright acted with deliberate indifference to her safety in hiring, training, supervising and monitoring officer Nicholson which "was a material cause of plaintiff's injuries...."  *Plaintiff's Complaint - Court Doc. No. 1-1* at 6. In support of this claim, Morton argues the policies of these defendants resulted in the hiring of Nicholson and allowed Nicholson to act in ways which violated her constitutional rights.  *Id.* at 6-7.  Defendants Allen and Albright adamantly deny they acted with deliberate indifference to Morton's safety.

A correctional official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows the inmate

23

faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[] reasonably to the risk.' *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1982-83, 128 L.Ed.2d 811 (1994). A plaintiff must also show that the constitutional violation caused [her] injuries." *Marsh*, 268 F.3d at 1028.

The law is well settled that both objective and subjective elements are necessary to establish an Eighth Amendment violation. With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm ... exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d 1028-1029. As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.... The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' ... ***[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment***." *Farmer*, 511 U.S. at 837-838 (emphasis added); *Campbell v.*

24

*Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that

the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v.*

*Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve

more than ordinary lack of due care for the prisoner's interests or safety....  It is ***obduracy***

***and wantonness, not inadvertence or error in good faith***, that characterize the conduct

prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in

connection with establishing conditions of confinement, supplying medical needs, or

restoring official control over a tumultuous cellblock."  *Whitley v. Albers*, 475 U.S. 312,

319 (1986) (emphasis added).

> To be deliberately indifferent, Defendants must have been
> "subjectively aware of the substantial risk of serious harm in order to have
> had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38,
> 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321,
> 2324-25, 115 L.Ed.2d 271 (1991)....  Even assuming the existence of a
> serious risk of harm and legal causation, the prison official must be aware of
> specific facts from which an inference could be drawn that a substantial risk
> of serious harm exists - and the prison official must also "draw that
> inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  "The known risk of injury must

be a strong likelihood, rather than a mere possibility before a [correctional official's]

failure to act can constitute deliberate indifference."  *Brown v. Hughes*, 894 F.2d 1533,

1537 (11th Cir. 1990) (citations and internal quotations omitted).  As the foregoing makes

clear, "[m]erely negligent failure to protect an inmate ... does not justify liability under

section 1983...." *Id.*

Pursuant to these criteria, Morton is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation[]" in order to survive summary judgment on her deliberate indifference claim against the supervisory officials. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Farmer*, 511 U.S. at 837-838 (To circumvent entry of summary judgment on a properly supported motion, plaintiff must produce sufficient evidence which demonstrates (1) an objectively substantial risk of serious harm; (2) a subjective awareness of this risk on the part of the defendants; (3) the defendants responded to such risk in an objectively unreasonable manner; and (4) the actions/omissions of the defendants caused her injuries); *Marsh*, 268 F.3d at 1028-1029 (same).

The record is completely devoid of evidence that the altercations with officer Nicholson occurred due to deliberate indifference on the part of defendants Allen and Albright. Morton presents no evidence of an objectively substantial risk of serious harm at the time of the challenged incidents nor is there any evidence demonstrating subjective awareness of a substantial risk of such harm by defendants Allen and Albright, each of which is a required element of the instant Eighth Amendment claim. Morton presents no evidence that correctional officers are not properly trained in the use of force or of a pattern of similar violations on the part of any correctional officer. Thus, this is not the type of

case in which a single incident may evidence deliberate indifference. *Ee e.g., Connick v. Thompson*, — U.S.—, 131 S.Ct. 1350 (2011).   Moreover, the evidentiary materials submitted by the defendants demonstrate that the actions about which Morton complains did not occur pursuant to any policy enacted by defendants Allen and Albright; rather, the evidence establishes that applicable policies prohibited the use of excessive, unnecessary or unreasonable force against inmates.

"Plaintiff has failed to establish that [these] Defendant[s] had a subjective awareness of a substantial risk of serious physical [harm] to Plaintiff; thus, Plaintiff has failed to establish a required element of this claim.  When viewing the evidence most favorably toward Plaintiff, a claim for deliberate indifference has not been established...."  *Carter*, 352 F.3d at 1350 (footnote omitted).  Consequently, summary judgment is due to be granted in favor of defendants Allen and Albright on any claim of deliberate indifference lodged against them by Morton arising from the alleged use of excessive force by officer Nicholson on October 24, 2007.

### G.  Respondeat Superior - Richard Allen and Frank Albright

To the extent Morton seeks to hold defendants Allen and Albright liable in their supervisory capacities for the actions of officer Nicholson, she is likewise entitled to no relief.  The law is well settled that a defendant "can have no respondeat superior [or vicarious] liability for a section 1983 claim." *Marsh v. Butler County*, 268 F.3d 1014,

1035 (11th Cir. 2001); *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Florida*, 402 F.3d 1092, 1115-1116 (11th Cir. 2005) (In establishing liability under § 1983, a prisoner cannot rely on theories of vicarious liability or respondeat superior.).  Thus, defendants Allen and Albright can be held liable for the challenged actions of officer Nicholson only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions ... and the alleged constitutional deprivation[s]." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation omitted).

Morton concedes defendants Allen and Albright did not personally participate in the force used against her by officer Nicholson on October 24, 2007.  Based on the foregoing, these defendants may be held liable in this 42 U.S.C. § 1983 action only if their actions bear a causal relationship to the purported violations of Morton's constitutional rights.  To

establish the requisite causal connection and therefore avoid entry of summary judgment in favor of these defendants, Morton must present sufficient evidence of either "a history of widespread abuse [that] put[] [Allen and Albright] on notice of the need to correct the alleged deprivation, and [the defendants] fail[ed] to do so...." or "a ... custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that [Allen and Albright] directed the subordinates to act unlawfully, or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). This standard of supervisory liability "is extremely rigorous." *Gonzalez*, 325 F.3d at 1234. A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates Morton has failed to meet this burden.

The record before the court contains no evidence to support an inference that Allen and Albright directed officer Nicholson to act unlawfully or knew this officer would act unlawfully and failed to stop such action nor can the court countenance the existence of any such evidence. Morton has likewise presented no evidence indicating a history of widespread abuse by Nicholson or other officers at Tutwiler which put Allen and Albright on requisite notice of incidents of excessive force against inmates. Consequently, neither method of establishing supervisory liability under the causal relationship test provides a basis for liability under § 1983. In addition, as previously noted, the record is devoid of

evidence that a custom, policy or practice of the Alabama Department of Correction resulted in the alleged violations of Morton's constitutional rights. *Cf. Employment Div. v. Smith,* 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); *Turner v. Safely,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Summary judgment is therefore due to be granted in favor of defendants Allen and Albright on the excessive force claim.

### H.  Supplemental Jurisdiction - Tort Claims Against Allen and Albright

With respect to the pendent state law claims for assault, battery and negligence presented against defendants Allen and Albright, the court concludes that these claims provide no basis for relief in this cause of action. Review of any pendent state law claim is only appropriate upon exercise of this court's supplemental jurisdiction. In the posture of this case, however, the court concludes that exercise of such jurisdiction over state tort claims against defendants Allen and Albright is inappropriate.

> Two factors determine whether state law claims lacking an independent federal jurisdictional basis can be heard in federal court with a federal claim over which the court has jurisdiction. To exercise pendent jurisdiction [or what is now identified as supplemental jurisdiction] over state law claims not otherwise cognizable in federal court, "the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a 'common nucleus of operative fact.'" *Jackson v. Stinchcomb,* 635 F.2d 462, 470 (5th Cir.1981) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). *See generally* C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3567 pp. 443-47 (1975).

*L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984). The

30

exercise of supplemental jurisdiction is completely discretionary. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper and Son*, 735 F.2d at 428. In view of the resolution of the federal claims presented by Morton against defendants Allen and Albright, the court concludes that any pendent state claims against these defendants are due to be dismissed. *Gibbs*, 383 U.S. at 726 (if the federal claims are dismissed prior to trial, the state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir. 1982). The court therefore declines to exercise supplemental jurisdiction over the pendent state tort claims against defendants Allen and Albright.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motions for summary judgment regarding the plaintiff's claims for monetary damages lodged against them in their official capacities be GRANTED as the defendants are entitled to absolute immunity from these claims.

2. The motion for summary judgment filed on behalf of Richard Allen and Frank Albright with respect to each of the plaintiff's claims presented against these defendants in the remaining aspects of their official capacities and in all aspects of their individual capacities be GRANTED.

3.  The motion for summary judgment filed on behalf of Espanolia Nicholson with respect to the plaintiff's equal protection and due process claims presented against this defendant in the remaining aspects of her official capacity and in all aspects of her individual capacity be GRANTED.

4.  The motion for summary judgment filed by Espanolia Nicholson regarding the plaintiff's excessive force claims lodged against this defendant in her official capacity for declaratory relief and in all aspects of her individual capacity be DENIED.

5.  This case be set for a jury trial before the district judge assigned this case on the plaintiff's surviving excessive force claims and supplemental state tort claims against Espanolia Nicholson.

It is further

ORDERED that **on or before June 6, 2011,** the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by

the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 23rd day of May, 2011.

_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE